**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

RE/MAX, LLC

Plaintiff,

v.

MERRITT & ASSOCIATES LLC, a Pennsylvania Limited Liability Company;
ROBERT O. MERRITT, a Pennsylvania Resident; and
CECELIA A. MERRITT AKA CECELIA PATTERSON, a Pennsylvania Resident

Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff RE/MAX, LLC ("RE/MAX") for its Complaint against Defendant Merritt & Associates LLC ("M&A"), Defendant Robert O. Merritt and Defendant Cecelia A. Merritt aka Cecelia Patterson (referred to herein as "Cecelia Merritt") (collectively "Defendants"), by and through counsel, Polsinelli PC, alleges as follows:

### Nature of the Action

In this action against a former franchise owner and the members/operators of a terminated RE/MAX real estate brokerage office in Philadelphia, Pennsylvania, who continue to hold themselves out as an authorized RE/MAX franchisee, RE/MAX seeks injunctive and monetary relief for direct and contributory acts of trademark counterfeiting, trademark infringement, and unfair competition under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq*., copyright

infringement under the U.S. Copyright Act, 17 U.S.C. § 501 *et seq*., and breach of contract under Colorado common law.

## The Parties

1.      RE/MAX is a Delaware limited liability company with its principal place of business at 5075 South Syracuse Street, Denver, Colorado 80237.

2.      Upon information and belief, M&A is a Pennsylvania limited liability company with its principal place of business at 2021 Stenton Ave., Philadelphia PA 19138.

3.      Upon information and belief, and according to the Pennsylvania Department of State public records, Defendant Robert Merritt is a broker and real estate agent with, and Managing Member of, Defendant M&A.

4.       Upon information and belief, and according to the Pennsylvania Department of State public records, Defendant Cecelia Merritt aka Cecelia Patterson is a real estate agent with, and a Member of, Defendant M&A.

## Jurisdiction and Venue

5.      This action arises under §§ 1114 and 1125(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 17 U.S.C. § 501 *et seq*. of the U.S. Copyright Act, and Colorado common law.

6.      The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

7.      This Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants agreed in the Franchise Agreement (Ex. C, ¶ 15(K)) to this Court's personal jurisdiction over them and that venue was appropriate in this District, and further because Defendants have caused an injury to RE/MAX in this District, as set forth in greater detail below.

**Background**

8.      Operating throughout the United States, the RE/MAX franchise network (the "RE/MAX Network") is a real estate system of independently owned and operated franchised offices and their affiliated independent contractor/sales associates who are authorized to use the RE/MAX trademarks in connection with providing real estate brokerage services.

9.      Those affiliated with the RE/MAX Network have provided real estate brokerage services in interstate commerce in the United States in connection with the RE/MAX and REMAX word marks, including a stylized form distinguished by "RE/MAX" in all capital letters in red or blue, accented with a contrasting red or blue diagonal slash, examples of which are set forth below:

   

a service mark consisting of a hot air balloon design, an example of which is set forth below:

                    

and the RE/MAX "for sale" sign design, examples of which are set forth below:






10.     RE/MAX owns numerous U.S. Trademark Registrations for a family of marks that includes those set forth above, including, but not limited to, U.S. Trademark Registration Nos. 1,139,014; 1,173,586; 1,691,854; 1,702,048; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,403,626; 2,850,985; 3,296,461; 3,338,086; 4,716,534; 4,986,346, 5,524,499, 5,504,643, 5,524,502, 5,504,642, 5,524,493, 5,411,423, 5,453,086, and 5,453,087. Copies of the registration certificates for these marks are attached as **Exhibit A**.

11.     U.S. Trademark Registrations 1,139,014; 1,173,586; 1,691,854; 1,702,048; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,403,626; 2,850,985; 3,296,461; 3,338,086 have achieved incontestability status under 15 U.S.C. § 1065.

12.     All other U.S. Trademark Registrations listed above are valid and subsisting and therefore constitute prima facie evidence of the validity of the marks set forth in these registrations and RE/MAX's exclusive right to use these marks in connection with the services set forth in these registrations.

13.     The federal registration rights and common law rights of RE/MAX in the marks described above are collectively referred to herein as the "RE/MAX Marks."

14.     RE/MAX also owns U.S. Copyright Registration No. VA-1-418-052 covering

 , No. VA 1-418-053 covering  , and No. VAu 1-187-335 covering various photographs of the RE/MAX balloon design (collectively, the "Copyrighted Works"). Copies of the certificates of registrations are attached as **Exhibit B**.

15.     The RE/MAX Marks and Copyrighted Works are used by those in the RE/MAX Network on a variety of advertising media including office signage, property listings, property signage, directional signs, open house signs, Internet websites, business cards, television commercials, billboards, bus stop benches, banners, and other advertising and promotional items.

16.     Since 1973, RE/MAX and the RE/MAX Network have invested billions of dollars to develop, promote, and maintain the RE/MAX Marks, among other marks owned by RE/MAX, in the United States and worldwide.

17.     Franchisees and their sales associates ("Sales Associates") in the RE/MAX Network have used the RE/MAX Marks and Copyrighted Works in connection with representing either the buyer or the seller more than 25 million times in real estate sale transactions in the United States and worldwide, resulting in over five trillion dollars in sales volume from 1973 to the present.

18.     At any given time, there are more than 180,000 RE/MAX property listings in the United States, almost all of which display prominently one or more of the RE/MAX Marks.

19.     As a result of substantial sales and extensive advertising and promotion, the RE/MAX Marks have become widely and favorably known as identifying real estate brokerage services originating from, sponsored by, or associated with the RE/MAX Network.

20.     The public has come to associate the well-known and distinctive RE/MAX Marks with the RE/MAX Network as a source of high-quality real estate brokerage services.

## The RE/MAX Specialist Franchise Agreement

21.     Defendant Robert Merritt and Defendant Cecelia Merritt, on behalf of Defendant M&A, renewed a franchise agreement effective November 24, 2017 with RE/MAX (the "Franchise Agreement") to own and operate a RE/MAX real estate brokerage using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Specialists, a copy of which is attached as **Exhibit C**.

22.     The Franchise Agreement provides that if the franchisee is a limited liability company, certain provisions of the Franchise Agreement are equally applicable to the owner of the limited liability company (in this case, Defendant Robert Merritt and Defendant Cecelia Merritt). Ex. C, ¶ 1.

23.     Further Defendant Robert Merritt and Defendant Cecelia Merritt entered into an agreement with RE/MAX under which Defendant Robert Merritt and Defendant Cecelia Merritt personally guaranteed full performance under the Franchise Agreement and agreed to be personally bound by and liable for breach of the same (the "Guaranty"), a copy of which is attached as **Exhibit D**.

24.     As part of the Guaranty, Defendant Robert Merritt and Defendant Cecelia Merritt agreed that their liability would not be diminished or affected by a subsequent termination of the Franchise Agreement.

25.     Certain provisions of the Franchise Agreement expressly survive its termination and remain enforceable, as discussed in more detail below.

26.     From approximately November 24, 2017 through May 21, 2020, RE/MAX Specialists operated as a RE/MAX franchise in Philadelphia, PA, with Defendant Robert Merritt serving as the manager and broker.

27.     The Franchise Agreement provides that, upon termination, Defendants must, among other de-identification obligations:

a.     immediately and clearly distinguish their operations from RE/MAX and not directly or indirectly at any time identify any business with which they are associated as being a current or former RE/MAX office or franchisee, or otherwise hold themselves out to the public in any way as being or having been affiliated with RE/MAX;

b.     immediately remove the RE/MAX Marks from their store or office front and premises, and from all advertising, marketing, and promotional materials, websites (including third-party directory listings) and other materials;

       c.      immediately notify their state real estate commission that their office is no longer in existence and that they are no longer affiliated with RE/MAX;

       d.      immediately cancel all trade, fictitious, or assumed names that contain any reference to any RE/MAX Marks; and

       e.      refrain from adopting or using in any manner, or for any purpose, the RE/MAX Marks and trade dress, including any "for sale" sign, trade dress, or identity scheme comprised of lateral elements in red and blue separated by a white element, a design comprised of a three horizontal bar design, and from the use of a hot air balloon design or a hot air balloon symbol.

Ex. C, ¶ 14(B) (provisions expressly applicable to Defendants).

28.      After several letters in 2020 demanding that Defendants cure violations of the Franchise Agreement, RE/MAX sent Defendants a Notice of Default and Demand To Cure dated April 20, 2020, pursuant to Paragraph 13(D) of the Franchise Agreement. The letter stated that failure to cure would result in termination of the Franchise Agreement.

29.      Defendants failed to cure the violations of the Franchise Agreement and as a result the Franchise Agreement was terminated effective May 21, 2020.

30.      In its termination letter dated June 3, 2020, RE/MAX specifically reminded Defendants of their contractual obligations in Paragraph 14(B) of the Franchise Agreement.

### Defendants' Breach of Contract, Counterfeiting, and Infringement

31.      In or around December 2020, RE/MAX learned that despite termination of the Franchise Agreement, Defendants continue to advertise and offer their real estate and brokerage services in Philadelphia, PA in connection with the RE/MAX Marks and Copyrighted Works,

including use of the RE/MAX Specialists trade name and use of the RE/MAX Marks and Copyrighted Works on various websites, including but not limited to, Facebook, LinkedIn, Yelp, and Zillow (see examples set forth in **Exhibit E**), and on storefront signage, yard signs, and premise signage, including as set forth below:

  

32.     Defendants' infringement has already caused actual confusion, including confusion by a third-party (post termination of the Franchise Agreement) who contacted RE/MAX, LLC to complain about Defendants, clearly mistakenly believing that Defendants were still associated with RE/MAX.

33.     Defendants' and their Sales Associates' actions have caused, and will continue to cause, RE/MAX monetary and other damages, at a minimum, in an amount to consist of reasonable franchise royalty payments for the continued use of the RE/MAX Marks and Copyrighted Works since termination of the Franchise Agreement, as well as additional damages caused to RE/MAX as a result of Defendants' actions.

34.     Had the Franchise Agreement continued in force, in order to be entitled to use the RE/MAX Marks and Copyrighted Works following termination on May 21, 2020, Defendants would have owed various fees set forth in the Franchise Agreement on an ongoing basis, including Continuing Franchise Fees in the amount of $128 per month per Sales Associate, plus the Broker Fee of 1% of Defendants' gross commission revenues, Advertising Fund Fees in the amount of $106 per month per Sales Associate, and Annual Dues in the amount of $410 (or $34.16 per month, pro rata) per year per Sales Associate. Ex. C, ¶ 6.

35.     In other words, Defendants would have owed a total of $268.16 from May 22, 2020 onwards per month per agent, plus 1% of the gross commission revenues in order to continue operating under the RE/MAX Marks and using the RE/MAX Copyrighted Works.

36.     Pursuant to the Renewal Addendum (a copy of which is attached as **Exhibit F**) entered into on August 8, 2018 between Defendants and RE/MAX, Defendants were obligated to maintain 20 Sales Associates at all times and were required to pay Franchise Agreement fees in accordance with this 20-Associate requirement.

37.     According to the Pennsylvania real estate commission records, M&A currently has 13 licensed agents working for RE/MAX Specialists. Therefore, at a maximum, Defendants would owe in the amount of $5363.20 per month from May 22, 2020 onwards (for 20 Associates) or, at a minimum, $3486.08 per month from May 22, 2020 onwards (for 13 Associates) per month, plus 1% of revenue.

38.     Between termination of the Franchise Agreement and the date this Complaint was filed, M&A's sales volume totaled $6,568,756. Assuming a commission rate of 6%, of which the

agent handling each side of the transaction would take half (3% for each agent), Defendants' gross commissions for the relevant period of time equal $197,062.68. 1% of that total equals $1,970.63.

39.     As a result, had the Franchise Agreement remained in force, Defendants would have owed a maximum of approximately $50,239.43 and a minimum of approximately $33,345.35 through the filing of this Complaint, and counting, in order to continue using the RE/MAX Marks and Copyrighted Works.

40.     Pursuant to the Franchise Agreement, RE/MAX is further entitled to liquidated damages in the amount of $500 for each day following the date of termination, after passage of a 10-day period, during which Defendants failed to timely perform their obligations upon termination. RE/MAX is also entitled to specific performance, injunctive relief, costs, and expenses, including reasonable attorneys' fees, incurred as a result of enforcing the Franchise Agreement. Ex. C, ¶¶14(H) & 15(G)-(H).

41.     Defendants' infringing use of the RE/MAX Marks began subsequent to RE/MAX's first use and registration of the RE/MAX Marks. In addition, Defendants began making unauthorized use of RE/MAX's Copyrighted Works well subsequent to the creation and fixation of the Works shown in RE/MAX's copyright registrations and subsequent to RE/MAX's registration of those works.

42.     Upon information and belief, Defendants and their Sales Associates will continue to commit the acts complained of in this Complaint unless enjoined.

43.     Defendants are profiting from or have profited from, or at the very least are aware of or willfully blind to, the acts of counterfeiting, infringement, and unfair competition by their Sales Associates, and are therefore contributorily liable for these acts.

44.     Moreover, the Franchise Agreement requires Defendants to supervise their Sales Associates to ensure proper use of the RE/MAX Marks, and states that default under the Franchise Agreement caused by one of Defendants' Sales Associates constitutes a material default of the Franchise Agreement. Ex C, ¶ 4(B)(9).

45.     Upon information and belief, Defendants' acts were knowingly, deliberately, and intentionally carried out in bad faith, or with a reckless disregard for, or with willful blindness to, RE/MAX's rights, for the purpose of causing confusion and/or trading on RE/MAX's reputation, thereby rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

46.     Upon information and belief, Defendants have profited and continue to profit from their unlawful acts.

47.     Defendants' infringement, counterfeiting, and breach of contract has caused and will continue to cause damages to RE/MAX, including monetary damages and damage to RE/MAX's hard-earned goodwill and reputation, as well as diminished control over the use of the RE/MAX Marks and Copyrighted Works or the quality of the services offered under the RE/MAX Marks and Copyrighted Works.

## COUNT I
### Trademark Counterfeiting in Violation of Federal Statute (15 U.S.C. § 1114)

48.     RE/MAX realleges the allegations contained in each of the paragraphs above.

49.     This is a claim for counterfeit use of RE/MAX's federally registered Marks as depicted in Exhibit A.

50.     Defendants and their Sales Associates have used and are using in commerce spurious designations that are identical to, or substantially indistinguishable from, the RE/MAX Marks, or that contain elements that are identical to, or substantially indistinguishable from,

elements of the RE/MAX Marks, in connection with services covered by registrations for the RE/MAX Marks.

51.     Defendants and their Sales Associates have used and are using these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, and sale of their services.

52.     Defendants' and their Sales Associates' use of the RE/MAX Marks to advertise and promote their real estate brokerage services was and is without the consent of RE/MAX since the date the Franchise Agreement was terminated.

53.     Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114.

54.     Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

55.     By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further counterfeiting the RE/MAX Marks.

56.     RE/MAX has no adequate remedy at law.

## COUNT II
### Trademark Infringement in Violation of Federal Statute (15 U.S.C. § 1114(1))

57.     RE/MAX realleges the allegations contained in each of the paragraphs above.

58.     This is a claim for infringement of RE/MAX's federally registered Marks, as depicted in Exhibit A.

59. Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114(1).

60. Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

61. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further infringing the RE/MAX Marks.

62. RE/MAX has no adequate remedy at law.

## COUNT III
## Unfair Competition in Violation of Federal Statute (15 U.S.C. § 1125(a))

63. RE/MAX realleges the allegations contained in each of the paragraphs above.

64. This is a claim for unfair competition, arising from Defendants' and their Sales Associates' unlawful acts, including, without limitation, use of a false designation of origin which is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65. Defendants' and their Sales Associates' conduct constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

66. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further unfairly competing with RE/MAX by infringing the RE/MAX Marks.

67. RE/MAX has no adequate remedy at law.

**COUNT IV**
**Copyright Infringement in Violation of Federal Statute (17 U.S.C. § 501)**

68.     RE/MAX realleges the allegations contained in each of the paragraphs above.

69.     This is a claim for infringement of RE/MAX's Copyrighted Works, as set forth in Exhibit B, arising from Defendants' and their Sales Associates' unauthorized reproduction and distribution of RE/MAX's Copyrighted Works.

70.     RE/MAX is the sole and lawful owner of all rights, titles, and interest in and to the copyrights in the Copyrighted Works, and these copyrights are valid and subsisting and have been valid and subsisting at all times since their inception.

71.     Defendants and their Sales Associates are not authorized to use RE/MAX's Copyrighted Works in any way.

72.     Defendants and their Sales Associates willfully copied RE/MAX's original works by making or having made advertising and marketing materials that bear designs that are identical or substantially similar to RE/MAX's Copyrighted Works, including after Defendants' limited license to use such Works terminated.

73.     Defendants and their Sales Associates acted with actual or constructive knowledge of RE/MAX's rights in their Copyrighted Works, and Defendants' infringement began after RE/MAX secured its copyright registrations, such that their actions constitute willful infringement of RE/MAX's Copyrighted Works through direct infringement, contributory infringement, and/or inducement to infringe.

74.     Defendants have a bad faith intent to profit from, and have profited from, the use of RE/MAX's Copyrighted Works.

75.     As a result of Defendants' and their Sales Associates' conduct, Defendants have realized and continue to realize profits and other benefits that belong to RE/MAX, entitling RE/MAX to an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

76.     By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further infringing RE/MAX's Copyrighted Works.

77.     RE/MAX has no adequate remedy at law.

### COUNT V
### Breach of Contract (Colorado Common Law)

78.     RE/MAX realleges the allegations contained in each of the paragraphs above.

79.     This is a claim for breach of the Franchise Agreement.

80.     The Franchise Agreement and Guaranty are valid and enforceable.

81.     Defendants have willfully and materially breached the Franchise Agreement, including by continuing to use the RE/MAX Marks and Copyrighted Works post termination of the Franchise Agreement.

82.     RE/MAX has fully performed its obligations under the Franchise Agreement.

83.     Defendants' unlawful conduct has caused and, unless restrained, will continue to cause damages and irreparable harm to RE/MAX.

84.     RE/MAX has no adequate remedy at law.

### Relief Sought

WHEREFORE, RE/MAX requests that this Court:

A.     Grant preliminary and permanent injunctive relief enjoining Defendants and their related entities, agents, servants, employees, successors, and assigns, and all those

in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from further breaching the Franchise Agreement, including, without limitation, by using the RE/MAX Marks and Copyrighted Works, including but not limited to use on promotional signs, premise and/or storefront signs, property signs, as an entity, corporate, or other trade name, in any domain name, and online.

B.   Grant preliminary and permanent injunctive relief enjoining Defendants and their related entities, agents, servants, employees, successors, and assigns and all those in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from:

i.   imitating, copying, duplicating, manufacturing, producing, circulating, or otherwise making any use of the RE/MAX Marks or any mark confusingly similar to the RE/MAX Marks;

ii.   using any unauthorized copy or colorable imitation of the RE/MAX Marks, or false designation of origin or description, in such fashion as is likely to relate or connect Defendants with RE/MAX or the RE/MAX Network or cause confusion;

iii.   using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Defendants or their Sales Associates is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

iv.     causing likelihood of confusion or injury to RE/MAX's business reputation and to the distinctiveness of the RE/MAX Marks by unauthorized use of identical or confusingly similar marks;

v.      engaging in any other activity constituting unfair competition or infringement of the RE/MAX Marks or RE/MAX's rights in, or to use, or to exploit the same; and

vi.     assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (i) – (v) above.

C.      Find Defendants liable for the causes of action alleged against them in this Complaint.

D.      Order Defendants to cease infringing RE/MAX's Copyrighted Works pursuant to 17 U.S.C. § 502 and order impounded all infringing items and all copies, plates, molds, or other articles by which such items may be reproduced, pursuant to 17 U.S.C. § 503.

E.      Order Defendants and their principals, agents, servants, employees, successors, and assigns of and all those in privity, acting in concert, or in participation with Defendants who receive actual notice of said order to deliver up, or at RE/MAX's election certify the destruction of, all signs, articles, promotional, advertising, and any other printed materials of any kind bearing one or more of the RE/MAX Marks, Copyrighted Works, any mark or design confusingly similar to the RE/MAX Marks, or any design substantially  similar  to the Copyrighted Works.

F.     Find Defendants liable, jointly and severally, and award to RE/MAX monetary damages in an amount to be fixed by the Court in its discretion as just, including, but not limited to, other amounts owed under RE/MAX's breach of contract claim, all of Defendants' profits or gains of any kind resulting from Defendants' willful infringement, counterfeiting, and/or acts of unfair competition, and any damages RE/MAX suffered as a result of Defendants' actions pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504, said damages to be trebled pursuant to 15 U.S.C. § 1117(b), and RE/MAX's reasonable attorneys' fees, costs, and exemplary damages in view of the intentional nature of the acts complained of in this Complaint and the exceptional nature of this case, pursuant to 15 U.S.C. § 1117 (a)-(b), 17 U.S.C. § 505, Paragraph 15(H) of the Franchise Agreement, and applicable common law, state statutory law, and federal law.

G.     At RE/MAX's election at any time prior to judgment in this matter, award to RE/MAX instead of actual damages for counterfeiting, statutory damages under 15 U.S.C. § 1117(c) and instead of actual damages for copyright infringement, statutory damages under 17 U.S.C. § 504(c).

H.     Although a reasonable royalty is generally insufficient, find that one reasonable measure of damages owed to RE/MAX by Defendants for continued use of the RE/MAX Marks and Copyrighted Works after termination of the Franchise Agreement is a reasonable royalty, as determined in part by the amount of fees Defendants would have owed RE/MAX for continued use of the RE/MAX Marks and Copyrighted Works under a valid Franchise Agreement.

I.      Award RE/MAX pre- and post-judgment interest on any monetary award made part

of the judgment against Defendants; and

J.      Grant to RE/MAX such other and further relief as the Court may deem just, proper,

and equitable under the circumstances.

## Jury Demand

RE/MAX demands a trial by jury on all issues so triable.


Respectfully submitted this 23rd day of March 2021.


*/s/ John R. Posthumus*
John R. Posthumus
Polsinelli PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (303) 572-9300
FAX: (303) 572-7883
Email: jposthumus@polsinelli.com


Plaintiff's Address:
5075 South Syracuse Street
Denver, Colorado 80237